FILED IN MY OFFICE
DISTRICT COURT CLERK
6/27/2017 3:41:42 PM
James A. Noel
Latoya Grayes

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

JOSEPH DION TORRES, on his behalf and on
behalf of similarly situated persons,

    Plaintiffs,

vs.                                        No. D-202-CV-2017-04691

CITY OF ALBUQUERQUE,
MICHELLE WALL, RICARDO VIALPANDO,
STEPHANIE GARCIA, RANDY HANES, and
ADAM BARELA, sued in their individual capacities,

    Defendants.

## CLASS ACTION COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS

Plaintiff Joseph Dion Torres brings this complaint pursuant to the New Mexico Tort Claims Act and 42 U.S.C. § 1983 asserting violations of his civil rights, and the rights of others similarly situated, by the City of Albuquerque and individual personnel of Albuquerque's Code Enforcement Division and the Albuquerque Police Department. In support thereof, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

This court has jurisdiction over the parties and the subject matter of the suit. The incident complained of occurred in New Mexico. All parties are located in New Mexico.

### PARTIES

1.    Plaintiff, an individual, is a resident of Albuquerque, New Mexico, currently domiciled there. He brings Count VIII of this complaint on behalf of himself and all others similarly situated.



EXHIBIT A

2. Defendant City of Albuquerque is a municipality located within the territorial limits of the State of New Mexico. Defendant City is a person within the meaning of 42 U.S.C. § 1983.

3. Defendant Michelle Wall was a Code Enforcement Specialist, employed by Defendant City and acting at all times material within the scope of her duty and under color of state law. Defendant Wall is sued in her individual capacity.

4. Defendant Ricardo Vialpando was a Code Enforcement Inspector, employed by Defendant City and acting at all times material within the scope of his duty and under color of state law. Defendant Vialpando is sued in his individual capacity.

5. Defendant Stephanie Garcia was a Code Enforcement Specialist, employed by Defendant City and acting at all times material within the scope of her duty and under color of state law. Defendant Garcia is sued in her individual capacity.

6. Defendant Randy Hanes is a police officer, employed by Defendant City and acting at all times material within the scope of his duty and under color of state law. Defendant Hanes is sued in his individual capacity.

7. Defendant Adam Barela is a police officer, employed by Defendant City and acting at all times material within the scope of his duty and under color of state law. Defendant Barela is sued in his individual capacity.

8. All individual defendants are principally charged with "maintain[ing] public order" within the meaning of NMSA 1978, § 41-4-3(D) (2015).

## FACTUAL BACKGROUND

9. Plaintiff suffers from post-traumatic stress disorder.

10. At all times material, Plaintiff owned the property at 3900 Suntrail Rd. NW, which is located in Albuquerque, New Mexico.

11. Plaintiff has lived in the house situated on the property for several years. It was his only home.

12. On April 14, 2016, Defendant Vialpando inspected Plaintiff's property and determined that Plaintiff's utility services had been shut off.

13. Without providing Plaintiff any notice, warning, or opportunity to be heard, Defendant Vialpando declared the home to be a substandard building in violation of various City ordinances, all of which relate to lack of utilities.

14. City ordinances provide that one may only be ordered to vacate his property when "the building or structure is in such condition as to make it immediately dangerous to the life, limb, property or safety of the public or of the occupants." Albuquerque, N.M., Rev. Ord. § 14-3-5-3(C)(1)(b).

15. Defendant City has previously agreed in a class action settlement in federal court not to "summarily evict" residents or tag their homes without probable cause that an immediately threatening condition exists in the home or on the property. The settlement agreement resulted from widespread constitutional violations committed under cover of the municipal housing code. See Lowery v. City of Albuquerque, No. CIV 09-0457 JB/WDS, 2011 WL 1336670 (D.N.M. Mar. 31, 2011).

16. On April 14, 2016, Defendant Vialpando posted a "Notice and Order" on the subject property which stated that Plaintiff had four days to vacate – due only to alleged lack of utilities.

17. A "Notice and Order" is a City-created form that contains, in pertinent part, identical language for all people who are notified of alleged substandard housing conditions.

18. The Notice and Order provided for an appeal of Defendant Vialpando's determination, but the "appeal must be in writing and filed with the Mayor's office prior to the effective date of [the] order."

19. The effective date of the order was April 14, 2016—the same day Defendant Vialpando made his inspection and posted the Notice.

20. By the time Defendant Vialpando declared that the property was substandard for lack of utilities and posted notice that the property had to be vacated, the deadline to appeal had passed.

21. According to Defendant City's form notice, failure to appeal "constitute[s] a waiver of the right to an administrative hearing and adjudication of the Notice and Order or to any portion thereof."

22. Plaintiff was given no opportunity to appeal and he forfeited his right to an administrative hearing through no fault of his own.

23. Plaintiff did not vacate his home because he had nowhere else to go.

24. On April 18, 2016, Defendant City put a lien on Plaintiff's property for alleged costs of boarding up and cleaning the property.

25. Nobody boarded up or cleaned the property.

26. On December 22, 2016, Defendant Garcia entered the side yard of Plaintiff's property to photograph the premises.

27. Defendant Garcia did not have a warrant and she did not have Plaintiff's permission to enter or inspect the curtilage of his home.

28. Defendant Garcia determined that Plaintiff's property "ha[d] violations" because he had "[w]eeds in the front yard of the property" and a "wood crate and a weight bench" along the side of the house.

29. Defendant Garcia re-posted the flawed April 14, 2016 Notice and Order on Plaintiff's property.

30. In an attempt to resolve the situation, Plaintiff called the phone number listed on the Notice and Order and an employee of Defendant City's Code Enforcement Division advised Plaintiff to pay his water bill.

31. Plaintiff paid to have his water restored, and it was, in fact, restored on February 27, 2017.

32. On March 10, 2017, Defendant Wall contacted the Albuquerque Police Department.

33. Defendants Hanes and Barela were dispatched to Plaintiff's property.

34. Upon arrival, Defendant Hanes spoke with Defendant Wall, who was also on scene.

35. Defendant Wall told Defendant Hanes that Plaintiff was trespassing.

36. Defendant Wall did not furnish to Plaintiff "an identification card signed by the Mayor", in violation of Section 14-3-5-10 of the municipal housing code.

37. Defendants Hanes and Barela made contact with Plaintiff and arrested him for criminally trespassing in his own home.

38. Plaintiff explained to Defendants Hanes, Barela, and Wall that his water had been restored and that his property should not be considered substandard.

39. Plaintiff was transported to jail and spent several hours in handcuffs.

40. Defendants Hanes and Barela searched the interior of Plaintiff's home without a warrant and without valid consent.

41. Defendant Wall photographed the interior of Plaintiff's home, and his backyard, without a warrant and without valid consent.

42. Defendant Wall used the fruits of the search to justify another substandard building determination and another Notice and Order, alleging new violations.

43. This Amended Notice and Order with Appeal ("the Amended Notice") was posted on Plaintiff's property on March 13, 2017, after he was arrested and told that he could no longer be on the premises.

44. The Amended Notice states that the property must be vacated immediately but simultaneously orders Plaintiff to make various repairs to the interior and exterior of the home.

45. The Amended Notice states that entry into the home is a criminal offense.

46. The Amended Notice provides for an appeal of Defendant Wall's determination, but— like the original notice— the "appeal must be in writing and filed with the Mayor's office prior to the effective date of [the] order."

47. The effective date of the order was March 13, 2017—the same day Defendant Wall posted the Amended Notice.

48. By the time Plaintiff had notice that Defendant Wall declared various new violations on the property, the deadline to appeal had passed.

49. Plaintiff was given no opportunity to appeal and he forfeited his right to an administrative hearing through no fault of his own.

50. Plaintiff's gas meter was removed and his house was boarded up with his possessions, including medications and his disability card, inside.

51. At no point has Plaintiff had any opportunity to challenge Defendants' determinations regarding his home.

52. As a result of Defendants' actions, Plaintiff has been homeless since March 10, 2017.

53. To this day, Defendant Hanes, as an officer-prosecutor, has speciously pursued the criminal trespass charge, which, by its terms, only applies when one "enter[s] or remain[s] upon the lands or property *of another*[.]" See Albuquerque, N.M., Rev. Ord. § 12-2-3.

54. By losing his home, being handcuffed for several hours, and by remaining in jeopardy of criminal punishment, Plaintiff has suffered severely—financially, emotionally, and physically.

55. Defendants have acted willfully, wantonly, with deliberate indifference, and in reckless disregard for Plaintiff's constitutional rights.

### COUNT I: UNREASONABLE SEIZURE OF PLAINTIFF'S HOME IN APRIL OF 2016

56. Plaintiff incorporates all preceding and forthcoming allegations as if stated herein.

57. Defendant Vialpando meaningfully interfered with Plaintiff's possessory interest in his home by encumbering the property with a substandard building declaration and lien in April of 2016.

58. Defendant Vialpando's actions in April of 2016 constitute a "seizure" within the meaning of the Fourth Amendment to the United States Constitution.

59. The seizure was not made pursuant to a warrant.

60. The seizure was not made in compliance with reasonable administrative procedures.

61. The Notice and Order was constitutionally flawed.

62. Defendant Vialpando seized Plaintiff's property and ordered Plaintiff to vacate the home without any exigency and without probable cause to believe that the structure was immediately dangerous to life, limb, property or safety of the public or of any occupant.

63. Defendant Vialpando seized Plaintiff's property without any pre-deprivation hearing, post-deprivation appeal, or any opportunity whatsoever to present evidence, cross-examine witnesses, or challenge Defendant Vialpando's determinations before a neutral decisionmaker.

64. Either Defendant Vialpando and Defendant City had a policy and practice of not complying with the municipal housing code, or the code itself is not sufficiently hedged with published standards or quasi-judicial administrative safeguards to ensure that seizures of property are reasonable and not arbitrary.

65. The April 2016 substandard building declaration ultimately caused Plaintiff's arrest and criminal charges to be filed against him.

66. The April 2016 substandard building declaration proximately caused damages previously alleged.

### COUNT II: UNREASONABLE SEARCH OF PLAINTIFF'S CURTILAGE IN DECEMBER OF 2016

67. Plaintiff incorporates all preceding and forthcoming allegations as if stated herein.

68. Plaintiff had a right to the enjoyment of the area immediately around his home without uninvited entry and inspection by government agents.

69. Defendant Garcia denied Plaintiff that right when she entered his curtilage to inspect and photograph the side yard without a warrant or any exigency.

70. Defendant Garcia did not have valid consent to enter, inspect, or photograph Plaintiff's side yard.

71. Defendant Garcia violated Section 14-3-5-9 of the municipal housing code.

72. The search of Plaintiff's curtilage was objectively unreasonable under the circumstances.

73. The search of Plaintiff's curtilage proximately caused damages previously alleged.

74. Photographs taken of Plaintiff's curtilage are fruit of the poisonous tree.

### COUNT III: UNREASONABLE SEARCH OF PLAINTIFF'S HOME IN MARCH OF 2017

75. Plaintiff incorporates all preceding and forthcoming allegations as if stated herein.

76. Plaintiff had a right to the enjoyment of his home without uninvited entry and inspection by government agents.

77. Defendants denied Plaintiff that right when they entered his home and backyard to inspect and photograph the premises without a warrant or any exigency.

78. Defendants did not have valid consent to enter, inspect, or photograph the interior of Plaintiff's home, or his backyard.

79. Defendants violated Section 14-3-5-9 of the municipal housing code.

80. The search of Plaintiff's home and backyard was objectively unreasonable under the circumstances.

81. The search of Plaintiff's home and backyard proximately caused damages previously alleged.

82. Photographs taken of Plaintiff's home and backyard are fruit of the poisonous tree.

### COUNT IV: UNREASONABLE SEIZURE OF PLAINTIFF'S HOME IN MARCH OF 2017

83. Plaintiff incorporates all preceding and forthcoming allegations as if stated herein.

84. Defendant Wall meaningfully interfered with Plaintiff's possessory interest in his home by coordinating with police to forcibly evict him in March of 2017; by subsequently encumbering the property with a substandard building declaration and lien; and by boarding up the home, removing the gas meter, and depriving Plaintiff of any lawful access to his property or possessions.

85. The actions of Defendants Wall, Hanes, and Barela constitute a "seizure" within the meaning of the Fourth Amendment to the United States Constitution.

86. The seizure was not made pursuant to a warrant.

87. The seizure was not made in compliance with reasonable administrative procedures.

88. The prior Notice and Order and the Amended Notice were both constitutionally flawed.

89. Defendants seized Plaintiff's property without any exigency and without probable cause to believe that the structure was immediately dangerous to life, limb, property or safety of the public or of any occupant.

90. Defendants seized Plaintiff's property without any pre-deprivation hearing, post-deprivation appeal, or any opportunity whatsoever to present evidence, cross-examine witnesses, or challenge Defendants' determinations before a neutral decisionmaker.

91. Either Defendants had a policy and practice of not complying with the municipal housing code, or the code itself is not sufficiently hedged with published standards or quasi-judicial administrative safeguards to ensure that seizures of property are reasonable and not arbitrary.

92. Defendants' actions proximately caused damages previously alleged.

## COUNT V: UNREASONABLE SEIZURE AND MALICIOUS PROSECUTION OF PLAINTIFF IN MARCH OF 2017

93. Plaintiff incorporates all preceding and forthcoming allegations as if stated herein.

94. Defendants deprived Plaintiff of his Fourth Amendment right to be secure in his person by detaining him, arresting him, and instituting legal process against him without probable cause or even arguable probable cause.

95. Defendants knew or should have known that Plaintiff owned the subject property and could not be arrested for or charged with criminally trespassing on his own land.

96. Even if all allegations against Plaintiff are to be believed, those allegations cannot state a violation of Albuquerque, N.M., Rev. Ord. § 12-2-3.

97. Plaintiff's prolonged detention was unwarranted.

98. Defendants acted without an arrest warrant.

99. Defendants lacked any exigency to justify Plaintiff's warrantless arrest.

100. Defendants instituted legal process against Plaintiff by filing a criminal complaint against him.

101. Defendants' conduct was unreasonable under the circumstances.

102. Defendants' actions proximately caused damages previously alleged.

### COUNT VI: VIOLATIONS OF PROCEDURAL DUE PROCESS

103. Plaintiff incorporates all preceding and forthcoming allegations as if stated herein.

104. Plaintiff had a cognizable property interest in his home and the possessions contained within.

105. Plaintiff had a cognizable interest in his liberty to enjoy his home without being subjected to arrest or criminal penalty.

106. Plaintiff was not afforded a hearing before his interests were impaired.

107. Plaintiff was not afforded any opportunity to appeal after his interests were impaired.

108. Both the Notice and Order and Amended Notice required Plaintiff to vacate his property without any opportunity to challenge administrative determinations with a hearing, or an appeal.

109. There was no special need for prompt government action against Plaintiff in April of 2016, or in March of 2017.

110. Defendants operated with unbridled discretion, and without any opportunity for a hearing or review conducted by a neutral decisionmaker.

111. The actions of Defendants were not random and unauthorized; rather they indicate that multiple investigators and specialists within Defendant City's Code Enforcement Division are coordinating with police and systematically employing constitutionally defective procedures to evict people from their homes.

112. Defendants' actions proximately caused damages previously alleged.

## COUNT VII: VIOLATIONS OF SUBSTANTIVE DUE PROCESS

113. Plaintiff incorporates all preceding and forthcoming allegations as if stated herein.

114. Rather than offering services to assist Plaintiff with his utilities or otherwise, Defendants have arrested him, speciously prosecuted him, and made him homeless without providing any meaningful opportunity to be heard.

115. Defendants summarily evicted Plaintiff without probable cause that an immediately threatening condition existed in his home or on his property.

116. Defendants did so after Plaintiff attempted to cure the issue alleged by paying his water bill.

117. In April of 2016, Defendants indifferently put a lien on Plaintiff's home for board-up costs and clean-up fees without boarding up or cleaning up anything.

118. Defendants repeatedly offended the Fourth Amendment without any justification or exigency.

119. In 2012, Defendant City had previously agreed in a class action settlement in federal court that it would not evict persons from their homes without probable cause that an immediately threatening condition exists. Defendants knew that their actions against Plaintiff in 2016 and 2017 were unlawful.

120. All told, Defendants actions were arbitrary, extreme, outrageous, and conscience-shocking.

121. Defendants' actions proximately caused damages previously alleged.

## COUNT VIII: MUNICIPAL LIABILITY FOR ALL PRECEDING CLAIMS AND FACTUAL ALLEGATIONS COMMON TO THE CLASS

122. Plaintiff incorporates all preceding and forthcoming allegations as if stated herein.

123. Defendant City has a custom and policy of violating civil rights with deliberate indifference.

124. Defendant City has a custom and policy of implementing the municipal housing code in a uniformly unconstitutional manner by using a Notice and Order form that fails to provide for any pre-deprivation notice and sets the deadline to appeal prior to the effective date of the Notice and Order.

125. Use of the constitutionally-defective form empowers Defendant City's personnel to arbitrarily seize persons and homes without any hearing, any right or opportunity to appeal, or any court order.

126. Defendant City's custom and policy is evident in the plain terms of the municipal housing code and in the City's form notice.

127. Implementation of Defendant City's custom and policy has caused injuries.

128. With respect to Count VIII, Plaintiff seeks to represent the following class: **All individuals or entities whose property interests have been impaired by Defendant City within three years prior to the filing of this complaint, based on a form notice that fails to provide any pre-deprivation hearing and sets the deadline for appeal on or prior to the date notice is posted or mailed.**

129. Based on the fact Defendant City is using a form notice to declare substandard housing, including at least twice using the same pertinent language in notices to Plaintiff, it appears that the class of plaintiffs is so numerous that joinder of all is impracticable.

130. Common questions of law and fact predominate over questions affecting only individual members, including, among others:

    a. Whether the municipal housing code's notice and appeal provisions are unconstitutional;

    b. Whether Defendant City's form notice provides inadequate judicial and administrative safeguards to comply with constitutional requirements;

    c. Whether Defendant City and its Code Enforcement Division has a policy and practice of effectuating seizures of homes and persons without notice or an opportunity to be heard;

    d. Whether injunctive and corresponding declaratory relief should be awarded to enjoin the continued use of the existing form; and

    e. Whether Defendant City's policy and practice as set forth above injured class members, and if so, the extent of the injury.

131. Defendants have acted in a manner generally applicable to the whole class.

132. Final relief, including injunctive and corresponding declaratory relief, will benefit the class as a whole.

133. Claims and defenses of the class are typical of claims and defenses of the representative party. The claims arise from the same provisions of the municipal housing code, the same form, and the same course of conduct.

134. Plaintiff will fairly and adequately represent class interests.

135. Plaintiff has retained competent counsel, experienced in civil rights law and class action litigation.

136. Maintaining this action as a class will:

    a. Avoid inconsistent adjudications with respect to individual members;

    b. Avoid the risk that any adjudication of Plaintiff's claims will impair or impede the rights of other individuals similarly affected;

    c. Ensure that other individuals affected by Defendant City's common practice might be compensated without unnecessary hardship that would result from duplicative discovery, effort, and expense.

### COUNT IX: FALSE IMPRISONMENT AND FALSE ARREST PURSUANT TO NMSA 1978, § 41-4-12

137. Plaintiff incorporates all preceding and forthcoming allegations as if stated herein.

138. Defendants Hanes and Barela lacked probable cause to arrest Plaintiff for the alleged violation of Albuquerque, N.M., Rev. Ord. § 12-2-3.

139. Defendants Hanes and Barela knew or should have known that Plaintiff owned the subject property and could not be detained, arrested for, or charged with criminally trespassing on his own land.

140. Defendants Hanes and Barela acted in coordination with Defendant Wall.

141. Even if all allegations against Plaintiff are to be believed, those allegations cannot state a violation of Albuquerque, N.M., Rev. Ord. § 12-2-3.

142. Defendant City is vicariously liable for the actions of Defendants Hanes, Barela, and Wall.

143. Defendants' actions resulted in bodily injury, personal injury, and property damage, and proximately caused damages previously alleged.

144. Immunity is waived by Section 41-4-12 of the New Mexico Tort Claims Act.

### COUNT X: MALICIOUS PROSECUTION PURSUANT TO NMSA 1978, § 41-4-12

145. Plaintiff incorporates all preceding and forthcoming allegations as if stated herein.

146. At the time Defendant Hanes prosecuted Plaintiff for violation of Albuquerque, N.M., Rev. Ord. § 12-2-3, Defendant Hanes knew that the charges were groundless, lacking probable cause.

147. The prosecution is irregular and malicious; its primary motive is to illegitimately punish Plaintiff at the instruction of Defendant Wall.

148. Defendant City is vicariously liable for the actions of Defendant Hanes, Barela, and Wall.

149. Defendants' actions resulted in bodily injury, personal injury, and property damage, and proximately caused damages previously alleged.

150. Immunity is waived by Section 41-4-12 of the New Mexico Tort Claims Act.

## COUNT XI: NEW MEXICO STATE CONSTITUTIONAL VIOLATIONS PURSUANT TO NMSA 1978, § 41-4-12

151. Plaintiff incorporates all preceding and forthcoming allegations as if stated herein.

152. The acts or omissions described in the preceding paragraphs amount to violations of Article II, Section 10 of the New Mexico Constitution, prohibiting unreasonable searches and seizures.

153. The acts or omissions described in the preceding paragraphs amount to violations of Article II, Section 18 of the New Mexico Constitution, prohibiting deprivation of liberty and property without due process of law.

154. The acts or omissions described in the preceding paragraphs amount to violations of Article II, Section 20 of the New Mexico Constitution, prohibiting the compulsory taking of private property without just compensation.

155. The provisions just cited are more protective than their federal counterparts.

156. Defendant City is vicariously liable for violations committed by its employees.

157. Defendants' actions resulted in bodily injury, personal injury, and property damage, and proximately caused damages previously alleged.

158. Immunity is waived by Section 41-4-12 of the New Mexico Tort Claims Act.

## COUNT XII: CONSTITUTIONALITY OF THE MUNICIPAL HOUSING CODE

159. Plaintiff incorporates all preceding and forthcoming allegations as if stated herein.

160. To the extent the relevant ordinances purport to authorize Defendants' actions, those ordinances are contrary to the Fourth and Fourteenth Amendments to the United States Constitution and Article II §§ 10, 18, and 20 of the New Mexico Constitution.

161. The definitions of "nuisance," "substandard building," "inadequate sanitation," and "structural hazards" in the municipal housing code invite arbitrary enforcement, criminalize constitutionally protected activity, and are so vague that persons of common intelligence must guess at their meaning.

162. In particular, the definition of "substandard building" empowers Defendant City to immediately deprive an owner/occupant of the right to occupancy; and the definition is so broad as to grant City personnel unbridled discretion to declare most any home a danger to the "property" or "welfare" of the occupant or others.

163. The flaw in the "substandard building" definition was particularly evident in this case when Defendant Garcia found "violations" for "[w]eeds in the front yard of the property" and a "wood crate and a weight bench" along the side of the house.

164. The notice provisions set forth in Section 14-3-5-3 of the municipal housing code permit unbridled discretion of the Mayor's representatives and are constitutionally defective.

165. The appeal provisions set forth in Section 14-3-5-4 of the municipal housing code permit unbridled discretion of the Mayor's representatives and are constitutionally defective.

166. In practice, Defendant City has unlawfully applied the municipal housing code against persons who are the subject of complaints by neighborhood associations and persons it targets for retribution.

167. In practice, Defendant City has trained its officers to enter homes by force, uncover minor violations of the housing code, and evict persons from their homes without any opportunity to be heard.

168. Sections 14-3-1-4, 14-3-4-1, 14-3-4-2, 14-3-4-3, 14-3-4-4, 14-3-5-3, and 14-3-5-4 are constitutionally defective, both on their face, and as applied in this case.

169. Enforcement of the Sections just cited intentionally and disproportionately harms persons who are poor, and persons who are disabled or suffering from mental illness.

170. A person cannot be constitutionally jailed and made homeless for failing to pay his utilities.

171. Injunctive relief is necessary.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests certification of the class, compensatory damages for him and for the class in an amount to compensate him and the class, punitive damages, attorney's fees and costs, interest on the judgment, a declaration that the above-cited Sections of the municipal housing code are unconstitutional, and a permanent injunction against Defendant City, prohibiting it from using its defective form and enforcing the housing code in an unconstitutional manner. Plaintiff further requests any other relief the Court deems just and proper.

Respectfully Submitted,

KENNEDY KENNEDY & IVES

*/s/ Joseph P. Kennedy*
Joseph P. Kennedy

Adam C. Flores
1000 2nd Street NW
Albuquerque, New Mexico 87102
(505) 244-1400 / Fax: (505) 244-1406
*Attorneys for Plaintiff*
jpk@civilrightslaw.com
acf@civilrightslaw.com

Adam C. Flores
1000 2nd Street NW
Albuquerque, New Mexico 87102
(505) 244-1400 / Fax: (505) 244-1406
*Attorneys for Plaintiff*
jpk@civilrightslaw.com
acf@civilrightslaw.com