IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


JOSEPH DION TORRES, on his behalf and
on behalf of similarly situated persons,

        Plaintiffs,

                                                  No. 1:17-cv-00754-MV-SCY

vs.

CITY OF ALBUQUERQUE, et al.,

        Defendants,


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion for Temporary Restraining Order, or in the Alternative, An Expedited Hearing for Preliminary Injunction [Doc. 17], filed August 25, 2017. This Court held an evidentiary hearing on September 5, 2017, at 9:30 a.m., and at the end of the hearing ordered that the Motion was **GRANTED**, while also ordering Mr. Torres to comply with some conditions laid out by Defendants.

### BACKGROUND

The allegations of the Complaint are summarized as follows. Plaintiff Joseph Dion Torres is a resident of Albuquerque and has owned his home for several years. [Doc. 17-1 ¶¶ 1-4]. On April 14, 2016, Defendant Ricardo Vialpando, a Code Enforcement Inspector for the City of Albuquerque, inspected Mr. Torres' property and discovered that the utility services had been shut off. Mr. Vialpando made a determination that the home was a substandard building, in violation of city ordinances pertaining to utilities, and he posted a "Notice and Order" on the home stating that Mr. Torres had four days to vacate. [Doc. 1-1 ¶¶ 12-16]. The Notice and Order provided for an appeal, but stated that such appeal "must be in writing and filed with the Mayor's office prior to

the effective date of this order. The effective date of this order is: 14-APR-2016." [Doc. 17-2 at 3].

Because he has nowhere else to go, Mr. Torres did not vacate his home. [Doc. 1-1 ¶ 23]. On April 18, 2016, the City put a lien on the property for the alleged costs of boarding up and cleaning the property, *see* Doc. 22-2 at 43, but nobody boarded up or cleaned the property. [Doc. 1-1 ¶¶ 24-25]. Several months later, on December 22, 2016, Defendant Stephanie Garcia, a Code Enforcement Specialist for the City of Albuquerque, entered the side yard of the property, without a warrant or consent, to photograph the premises. She determined that the property had violations because of "weed[s] in the front yard of the property and a "wood crate and a weight bench" along the side of the house. *Id.* ¶ 26-28. Ms. Garcia re-posted the previous Notice and Order. *Id.* ¶ 29. Mr. Torres then called the phone number listed on the Notice and Order, and was advised that he should pay his water bill. *Id.* ¶ 30. Mr. Torres paid his water bill and his water service was restored on February 27, 2017. *Id.* ¶ 31.

Over two months later, on March 10, 2017, Mr. Torres was arrested for criminally trespassing in his own home. *Id.* ¶ 37. Defendant Michelle Wall, another Code Enforcement Specialist for the City, contacted the Albuquerque Police Department, and two officers, Defendants Hanes and Barela, were dispatched to Mr. Torres' home. Ms. Wall met the officers at the property and told Officer Hanes that Mr. Torres was trespassing. During his arrest, Mr. Torres told Ms. Wall and the officers that his water had been restored and that his property should not be considered substandard. *Id.* ¶¶ 32-38; *but see* Doc. 22-C, D, E (officer body camera footage from the arrest, which does not appear to include this conversation). Nevertheless, Mr. Torres was transported to jail and spent several hours in handcuffs. [Doc. 1-1 ¶ 39]. Officers Hanes and Barela searched the interior of the home and Ms. Wall took photographs of the interior of the home

and the backyard, allegedly without a warrant or consent. *Id*. ¶¶ 40-41; *but see* Doc. 22-C, E (officer body camera footage from the arrest, indicating that Mr. Torres may have given consent to the search of his home). Ms. Wall used the fruits of this search to justify another substandard building determination and she issued an Amended Notice and Order, alleging new violations, on March 13, 2017. [Doc. 1-1 ¶¶ 42-43]. The Amended Notice states that the property must be vacated immediately and that entry into the home is a criminal offense, but also orders Mr. Torres to make repairs to the interior and exterior of his home. *Id*. ¶ 45. Like the earlier notices, the deadline to appeal the Amended Notice was the same date that the notice was posted. *Id*. ¶¶ 46-47. The Complaint further alleges that the home was boarded up with Mr. Torres' possessions inside and that the gas meter was removed from the house. *Id*. ¶ 50.

Mr. Torres has been homeless since the date of his arrest, March 10, 2017. *Id*. ¶ 52. Mr. Torres ran out of money to stay in a hotel and has been sleeping in a friend's backyard. [Doc. 17 at 4]. Mr. Torres has gone into debt to pay for these arrangements. *Id*. Furthermore, Mr. Torres suffers from post-traumatic stress disorder and his condition has been exacerbated by his current living situation. *Id*. Despite these difficulties, however, Mr. Torres has fully paid his water and gas bills. His home can have utilities services restored as soon as he is permitted to be on his property to meet with the gas company's representative. *Id*.

Mr. Torres filed a Class Action Complaint for Deprivation of Civil Rights in the Second Judicial District Court, Bernalillo County, on June 27, 2017. The Complaint was removed to federal court on July 20, 2017. [Doc. 1-1]. Count I alleges unreasonable seizure of Mr. Torres' home in April, 2016. *Id*. ¶¶ 56-66. Count II alleges unreasonable search of the curtilage of Mr. Torres' home in December, 2016. *Id*. ¶¶ 67-74. Count III and IV allege unreasonable search and seizure of Plaintiff's home in March, 2017. *Id*. ¶¶ 75-92. Count V alleges unreasonable seizure

and malicious prosecution of Mr. Torres in March, 2017. *Id*. ¶¶ 93-102. Counts VI and VII allege violations of Procedural and Substantive Due Process under the U.S. Constitution. *Id*. ¶¶ 103-21. Count VIII alleges all claims common to a class of "individuals or entities whose property interests have been impaired by Defendant City within three years prior to the filing of this complaint, based on a form notice that fails to provide any pre-deprivation hearing and sets the deadline for appeal on or prior to the date notice is posted or mailed." *Id*. ¶ 128. Counts IX and X allege false imprisonment, false arrest, and malicious prosecution under New Mexico Tort Claims Act. *Id*. ¶¶ 137-50. Counts XI and XII allege New Mexico constitutional violations. *Id*. ¶¶ 151-71. Defendants Answered the Complaint on August 3, 2017. [Doc. 15].

Mr. Torres filed the present Motion for Temporary Restraining Order or Preliminary Injunction on August 25, 2017. [Doc. 17]. Mr. Torres asks the Court to order Defendants to "cease denying Joseph [Torres] entry onto his property." [Doc. 17 at 11]. Specifically, Mr. Torres asks that the City remove all boards on doors or windows, any notices posted on the property, and any encumbrances or liens on the property. *Id*.

Defendants filed a Response to the Motion, with supporting affidavits and exhibits, on August 31, 2017. [Doc. 22]. In sum, Defendants argue that they acted reasonably in determining that the home was substandard, attempting to communicate to Mr. Torres what repairs were needed, and in ultimately having to arrest Mr. Torres for remaining in the home and taking down the City's notices, which it reposted repeatedly. [Doc. 22 at 13-16; 22-1 at 1-4]. Defendants assert that Mr. Torres was not summarily evicted because the Notice and Order provided four days for Mr. Torres to restore his utilities, during which time he was not required to vacate his home, but that even with Mr. Vialpando's willingness to "work with Mr. Torres, . . . Mr.

Torres was not willing to cooperate with Code Enforcement." [Doc. 22 at 9-10].[1] Defendants explain that the City stands ready to allow Mr. Torres onto his property, stating that "[o]nce the utilities are turned on, the backdoor exit is corrected, and the biohazards (namely, the feces covering the bathroom of the home) are cleaned up, Plaintiff may again occupy his home." *Id*. at 5. Given that Mr. Torres is already prepared to address his utilities, Defendants argue that their additional requirements "are not so onerous that a preliminary injunction should issue." *Id*. at 6.

This Court held a hearing on September 5, 2017, during which the Court heard arguments on the Motion and invited the parties to present evidence. No additional evidence was presented, although the City provided the Court with color copies of the photographs of the home previously submitted in Doc. 22-2. Counsel for Mr. Torres assured the Court that Mr. Torres was able to complete the remediation steps specified by the City. At the conclusion of the hearing, the Court ordered that a preliminary injunction would issue and that Mr. Torres would be required to make the specified repairs.

### STANDARD

A preliminary injunction "is an extraordinary remedy," and accordingly, "the right to relief must be clear and unequivocal." *Schrier, M.D. v. Univ. of Colo.,* 427 F.3d 1253, 1258 (10th Cir. 2005) (citation omitted). To obtain a preliminary injunction, Rule 65 of the Federal Rules of Civil Procedure requires the moving party to establish that four equitable factors weigh in favor of the injunction: "(1) irreparable injury in the absence of the injunction, (2) the threatened injury to the moving party outweighs the harm to the opposing party resulting from the injunction, (3) the

---

[1] Mr. Vialpando states in his affidavit that he first started inspecting Mr. Torres' property in January, 2016, and that he received numerous "311 complaints" about Mr. Torres. [Doc. 22-1 at ¶ 4-5]. Mr. Vialpando had multiple interactions with Mr. Torres, including an instance when Mr. Torres came to the Code Enforcement and Zoning Division's Office, a few weeks after his home was boarded. Mr. Vialpando says he discussed with Mr. Torres that he would be allowed to access his property during normal business hours in order to make repairs. [Doc. 22-1 ¶ 8].

injunction is not adverse to the public interest, and (4) the moving party has a substantial likelihood of success on the merits." *Westar Energy, Inc. v. Lake,* 552 F.3d 1215, 1224 (10th Cir. 2009).[2] The Tenth Circuit has modified this standard as follows:

> If the party seeking the temporary restraining order can establish the [first] three factors listed above, then the [last] factor becomes less strict – i.e., instead of showing a substantial likelihood of success, the party need only prove that there are 'questions going to the merits . . . so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'

*Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001) (citing *Federal Lands Legal Consortium v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999)).

"[T]he limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Schrier,* 427 F.3d at 1258 (citation omitted). For this reason, the Tenth Circuit has identified three types of specifically disfavored preliminary injunctions: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Id.* (citation omitted). "[A]ny preliminary injunction fitting into one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal,* 389 F.3d 973, 975 (10th Cir. 2004), *aff'd,* 546 U.S. 418 (2006). Further, "a party seeking such an

---

[2] "The requirements for the issuance of a temporary restraining order are similar to those for the issuance of a preliminary injunction." *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.,* 633 F.Supp.2d 1257, 1267 (D.N.M. 2008). Unlike a preliminary injunction, if certain circumstances exist, a temporary restraining order may issue without notice to the opposing party, and is of limited duration. *Id.* However, as the Court has held a hearing at which both parties were afforded the opportunity to present legal arguments and evidence with regard to the Motion, the Court shall consider Plaintiffs' request for a preliminary injunction rather than their request for a temporary restraining order.

injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Id.* at 976.

With regard to the first type of disfavored preliminary injunctions, those that alter the status quo, the Tenth Circuit has explained that the "status quo is the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Schrier,* 427 F.3d at 1260. "In determining the status quo for preliminary injunctions, this court looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights." *Id.* With regard to the second type of disfavored preliminary injunctions, those that are mandatory, the Tenth Circuit has explained that an injunction is mandatory "if the requested relief affirmatively requires the nonmovant to act in a particular way, and as a result places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *Id.* at 1261.

## DISCUSSION

Before turning to the requirements for a preliminary injunction under Rule 65, the Court notes that Mr. Torres' request does not fall under any of the three types specifically disfavored by the Tenth Circuit. First, the request does not alter the "last uncontested status between the parties which preceded the controversy," *Schrier,* 427 F.3d at 1260, because Mr. Torres had access to his home before the present controversy concerning the City's enforcement of certain local ordinances. In other words, the status quo relationship between Mr. Torres and the City is one in which Mr. Torres is free to occupy his home. Accordingly, Mr. Torres' request to regain access to his home seeks to restore the status quo.

Second, the requests at issue call for discrete actions by both the City and Mr. Torres, and do not put the Court "in a position where it may have to provide ongoing supervision to assure the

nonmovant is abiding by the injunction." *Id.* at 1261. Third, Mr. Torres is not asking for "all the relief that it could recover at the conclusion of a full trial on the merits." *Id*. at 1258. The Complaint seeks substantially more than Mr. Torres' access to his home, including class certification, compensatory damages, punitive damages, attorney's fees and costs, interest, a declaratory judgment regarding the municipal housing codes at issue, and a permanent injunction. [Doc. 1-1 at 18].

Having determined that Mr. Torres' Motion for Preliminary Injunction is not of a type subject to additional scrutiny or disfavor in this Circuit, the Court turns to the requirements for a preliminary injunction under Rule 65. The Court considers first Mr. Torres' risk of irreparable injury, the balance of harms, and the public interest. These three factors weigh overwhelmingly in favor of granting Mr. Torres' preliminary injunction request, but also in favor of ordering Mr. Torres to comply with the three conditions set out by the City in order for living conditions at the home to be safe and sanitary. With respect to Mr. Torres' likelihood of success on the merits, the Court finds that "there are questions going to the merits . . . so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Prairie Band of Potawatomi Indians*, 253 F.3d at 1246. The Court therefore grants Plaintiffs' Motion for Preliminary Injunction.

## I. Mr. Torres' Risk of Irreparable Injury

"Irreparable harm" means that "the injury 'must be both certain and great' and that it must not be 'merely serious or substantial.' . . . [I]rreparable harm is often suffered when 'the injury can[not] be adequately atoned for in money,' or when 'the district court cannot remedy [the injury] following a final determination on the merits.'" *Prairie Band of Potawatomi Indians*, 253 F.3d at 1250 (citations omitted). "A plaintiff suffers irreparable injury when the court would be unable to

grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (citing *Tri-State Generation & Transmission Assoc., Inc., v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1354 (10th Cir. 1989)).

"When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Id.* (citing 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed.1995)). As set forth above, Mr. Torres is currently homeless and living in a friend's backyard, enduring the dangerously oppressive summer heat, with the majority of his possessions boarded up inside his home. As far as he and his counsel understood Mr. Torres' rights at the time of filing their Motion, Mr. Torres would be subject to criminal penalties if he set foot on his property, so he has been unable to make the necessary remedies. [Doc. 17 at 10]. It is clear to the Court that having to live outside, without one's possessions, takes an irreparable physical and emotional toll on a person. Monetary damages to compensate for this traumatic experience would be difficult to ascertain and ineffective in ameliorating the trauma. While the Court understands the City's position that Mr. Torres could avoid this situation by restoring his utilities, repairing the back door and cleaning up feces in the home, the Court is concerned that Mr. Torres and his counsel apparently did not have sufficient notice of this path to ameliorate the problem. Under the current circumstances of Mr. Torres perceiving that he is being forced into homelessness, the Court is inclined to find that Mr. Torres will suffer irreparable injury by being homeless due to government action.

### II. Balance of Harms

Defendants' position focuses on the dangerous and unsanitary conditions of the home, arguing that it is in the interest of Mr. Torres' health and safety to not be allowed to live there.

[Doc. 22 at 8-9]. Mr. Torres' position focuses on the dangerousness and the trauma of homelessness. [Doc. 17 at 10-11]. Both are very legitimate concerns. In considering these concerns as a whole, the Court is inclined to order that the City allow Mr. Torres to re-occupy his home and that Mr. Torres arrange for restoring his utilities, repairing the back door, and cleaning up the feces in the home.

## III. Public Interest

Defendants argue that lack of utilities is a danger to the public. In particular, Defendants point out that without running water, one would be unable to put out a fire, and that without gas, one has no access to hot water or lighting and may resort to unsafe alternatives such as a gas generator. [Doc. 22 at 9]. While these are legitimate public interest concerns, the Court remains steadfast in its instance that Mr. Torres' homelessness is not an acceptable resolution to these concerns. In light of the risks and harms to both the public and Mr. Torres, the Court is inclined to order the aforementioned actions from both parties.

## IV. Likelihood of Success on the Merits

Defendants argue that Plaintiffs cannot succeed on the merits because Defendants are entitled to qualified immunity. Specifically, Defendants argue that their Response to the Motion "established . . . that the procedural due process standards have been met and no unreasonable municipal action has been taken." [Doc. 22 at 14]. When a defendant raises the defense of qualified immunity in the context of a motion to dismiss, the burden shifts to the plaintiff to (1) come forward with allegations sufficient to show that the defendant's alleged actions violated a federal constitutional or statutory right and (2) show that the federal right was clearly established at the time of the challenged conduct. *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*,

847 F.2d 642, 646 (10th Cir. 1988); *P.J. ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010).

Here, the Court is concerned that Mr. Torres has made allegations that are "so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Prairie Band of Potawatomi Indians*, 253 F.3d at 1246. In particular, the Court is perplexed as to why the Notice and Order would indicate that the deadline to appeal had lapsed the same date the notice was posted. Defendants argued both in their Response and at the hearing that although the Notice and Order had "seemingly preclusive language" regarding right to appeal, "reasonable inquiry would have revealed to Plaintiff his right to an appeal pursuant to the Uniform Housing Code . . . . As attested to by Defendants Vialpando and Wall, the Housing Advisory and Appeals Committee ('HAAC'), to their knowledge, has never denied an appeal due to the deadline expiring." [Doc. 22 at 11]. The Court does not agree that consulting the Uniform Housing Code would have been a reasonable inquiry for Mr. Torres and others who receive a notice containing "preclusive language." The factual dispute regarding Mr. Torres' procedural due process rights suggests that Defendants may not be entitled to qualified immunity. In light of the other three factors weighing in favor of injunctive relief, the Court finds that the merits of Plaintiffs' claims pose substantial questions deserving of further investigation.

## CONCLUSION

For the foregoing reasons, at the conclusion of the hearing on September 5, 2017, the Court found that a preliminary injunction would issue and that both Mr. Torres and the City would be ordered to take certain steps in order for Mr. Torres to resume safe and sanitary occupation of his home. Pursuant to the Court's oral ruling at the hearing, **IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Preliminary Injunction [Doc. 17] is **GRANTED**. The City was ordered to

remove the boards on the home within 48 hours of the hearing (i.e. by 10:30 a.m., September 7, 2017).

**IT IS THEREFORE FURTHER ORDERED** that Mr. Torres shall complete the following remediation tasks in his home, 3900 Suntrail Road N.W., Albuquerque, New Mexico:

1. Complete restoration of utilities to the property by September 15, 2017,

2. Make repairs to the blocked back door by September 12, 2017, and

3. Clean up the feces in the home by September 22, 2017.

Plaintiffs' counsel will provide photographs of these repairs to Defendants' counsel after the repairs are made.

**DATED** this 18th day of September, 2017.

MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Adam C. Flores | Kristin J. Dalton |
| Joseph P. Kennedy | Assistant City Attorney |
| Kennedy Kennedy & Ives | |
| | Michael E. Fondino |
| *Attorneys for Plaintiffs* | Assistant City Attorney |
| | |
| | *Attorneys for Defendants* |